# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

### 13-61557-CIV-DIMITROULEAS

AL-GHENA INTERNATIONAL CORP. and
SHAIRCO FOR TRADING, INDUSTRY AND
CONTRACTING, individually and derivatively
as Members in the right of CORTEZ PROPERTY
DEVELOPMENT LLC,

      Plaintiffs,

vs.

TALAT RADWAN;  JASON RADWAN; and
CORTEZ HOLDING GROUP INC.,

      Defendants.

_____ /

## SECOND AMENDED COMPLAINT

Plaintiffs, AL-GHENA INTERNATIONAL CORP. (hereinafter "Al-Ghena"), a

corporation of the Commonwealth of Dominica, and SHAIRCO FOR TRADING, INDUSTRY

AND CONTRACTING (hereinafter "Shairco"), a corporation of the Kingdom of Saudi Arabia,

each acting individually on behalf of themselves and derivatively as Members of, and in right of

CORTEZ PROPERTY DEVELOPMENT LLC (hereinafter "CPD"), a Florida limited liability

company, by and through their undersigned counsel, hereby file this Second Amended

Complaint against the Defendants, TALAT RADWAN, an individual, JASON RADWAN, an

individual, and CORTEZ HOLDING GROUP INC. (hereinafter "Cortez Holding"), and state as

follows:

1

## PRELIMINARY STATEMENT

1.  This is an action for damages and equitable relief arising out of the affairs of a limited liability company known as Cortez Property Development LLC.

2.  The plaintiffs are foreign corporations which, in 2007, each purchased one-third of the ownership interest in CPD, thereby becoming Members of the limited liability company.

3.  The defendants are two individuals and a Florida corporation which acted in concert to deprive the plaintiffs of the benefits of their ownership interest in CPD, diverted CPD assets in violation of their respective legal, contractual, and fiduciary duties, and withheld from the plaintiffs documents and information to which plaintiffs are entitled as a matter of law.

4.  The defendants have, from the outset of the transactions that are the subject of this Second Amended Complaint and continuously through the date of the filing hereof, engaged in a pattern of fraudulent representations and conduct, all with the intent of defrauding the plaintiffs and depriving them of property to which they are entitled.

5.  The plaintiffs, which collectively are the owners of two-thirds of the closely-held company referred to herein as CPD, bring this action individually and in right of the limited liability company seeking an accounting of the company's assets and activities, restitution for those assets that have been misappropriated by the defendants, and such other relief as may be appropriate.

## JURISDICTION AND VENUE

1.  The amount in controversy in this action is in excess of $75,000.00, exclusive of attorney's fees and costs.

2.  Based upon the citizenship of the parties, this Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.

706832v1 997083.0001

3.  Plaintiff Al-Ghena is a corporation of the Commonwealth of Dominica, having its principle place of business in the State of Kuwait at Fahed Al Salem Street, Al-Nassar Tower, Al-Qibla, Kuwait.

4.  Plaintiff Shairco is a corporation of the Kingdom of Saudi Arabia, having its principle place of business at the Shairco Building, Arafat Street, Al Hamraa District, Jeddah 21413, Saudi Arabia.

5.  Defendant Cortez Holding Group, Inc. is a Florida corporation having its principle place of business at 26371 Avery Parkway, Mission Viejo, California 92962.

6.  Defendant Talat Radwan is a citizen of the state of California, and is an owner and/or officer of defendant Cortez Holding Group, Inc., exercising control over the operations thereof at all times relevant hereto.

7.  Defendant Jason Radwan is a citizen of the state of California, and is an owner and/or officer of defendant Cortez Holding Group, Inc., exercising control over the operations thereof at all times relevant hereto.

8.  Cortez Property Development LLC ("CPD") is a Florida limited liability company, of which each of the plaintiffs is a Member, each having a one-third ownership interest.

9.  The plaintiffs, which collectively are the owners of two-thirds of CPD, a closely-held company, bring this action individually to enforce their rights as Members of CPD, and derivatively in the right of the company.  The verification page executed by Kamal Halal is executed in his capacity as a manager of Shairco for Trading, Industry and Contracting.

10.  Venue is proper pursuant to 28 U.S.C. § 1391, as defendant Cortez Holding Group Inc. has its registered address and its principal address in Broward County, at 3500 Powerline Road, Oakland Park, Florida.

706832v1 997083.0001

## COUNT I

### Violation of Florida Statutes Chapter 608

1.  Plaintiffs  adopt and reallege the identification paragraphs set forth above as Paragraphs 1-10 of the Jurisdiction and Venue section, as if fully set forth herein.

2.  Cortez Property Development LLC ("CPD") is a Florida limited liability company formed in 2005, according to the official records of the state of Florida.  (Exhibit A)

3.  On an exact date currently unknown to the plaintiffs, prior to October 30, 2007, defendant Cortez Holding acquired the ownership of CPD, and upon information and belief became the sole Member thereof.

4.  On or about October 30, 2007, defendant Talat Radwan, in his capacity as President of Cortez Holding, executed a Purchase Agreement whereby Mohammad Al Nassar or his assignee was to acquire one-third of the ownership interest of CPD.  (Exhibit B)

5.  Thereafter, Mohammad Al Nassar assigned the Purchase Agreement to plaintiff Al-Ghena, which at the instruction of Talat Radwan, transferred six million dollars to an escrow account, which money was subsequently released to defendant Cortez Holding.

6.  By letter dated January 15, 2008, Talat Radwan, on behalf of Cortez Holding, confirmed that Al-Ghena had become a one-third owner of CPD.  (Exhibit C)

7.  In confirmation of Al-Ghena's status as a Member of CPD, Cortez Holding provided to Al-Ghena an executed stock certificate, reflecting Al-Ghena's one-third ownership of the company as of January 10, 2008.  (Exhibit D)

706832v1 997083.0001

8.  Al-Ghena has at all times since the issuance of the certificate, and continuing through the date of the filing of this Second Amended Complaint, maintained its ownership interest in Cortez Holding.

9.  On or about December 12, 2007, defendant Talat Radwan, in his capacity as President of Cortez Holding, executed a Purchase Agreement whereby plaintiff Shairco was to purchase one-third of the ownership interest of CPD.  (Exhibit E)

10.  Thereafter, at the instructions of Talat Radwan, Shairco transferred six million dollars to an escrow account, which money was subsequently released to defendant Cortez Holding.

11.  By letter dated January 15, 2008, Talat Radwan, on behalf of Cortez Holding, confirmed that Shairco had become a one-third owner of CPD.  (Exhibit F)

12.  In confirmation of Shairco's status as a Member of CPD, Cortez Holding provided to Shairco an executed stock certificate, reflecting Shairco's one-third ownership of the company as of January 10, 2008.  (Exhibit G)

13.  With the one exception set forth below, Shairco has at all times since the issuance of the certificate, and continuing through the date of the filing of this Second Amended Complaint, maintained its ownership interest in Cortez Holding.

14.  In order to facilitate the conduct of this litigation, prior to the filing of the original Complaint in this action, Shairco assigned it ownership rights in CPD to a New Jersey corporation fully-owned by Shairco, known as "Shairco New Jersey."

15.  Prior to the filing of this Second Amended Complaint, that assignment has been reversed, such that the New Jersey corporation has assigned all ownership rights back to the original company that owned the shares, plaintiff Shairco for Trading, Industry and Contracting.

5

16.  The rights asserted in this first count of the Second Amended Complaint arise under the Florida Limited Liability Company statutes, Chapter 608 of the Florida Statutes.

17.  The Florida Legislature has enacted a new statutory scheme for limited liability companies, modeled on the Revised Uniform Limited Liability Company Act, which becomes effective January 1, 2014.

18.  Pursuant to the new Act, the provisions of Chapter 608 will continue to apply to CPD either through December 31, 2014, or until CPD makes an election to come under the new Act, whichever event occurs first.

19.  The new Act, should it become effective as to CPD during the course of this action, would continue, and in some cases expand, each of the existing statutory rights asserted by the plaintiffs herein, including the right to demand and receive certain documents, and the right to maintain a derivative action in the right of CPD.

20.  Section 608.423 of the Florida Statutes gives members of a limited liability company the option of entering into an Operating Agreement, stating that they "may" enter into such an agreement, either written or verbal.

21.  The creation of an Operating Agreement is not mandatory under Florida law, and the absence of such an Agreement does not deprive the Members of a limited liability company of their ownership rights or interests therein.

22.  Furthermore, pursuant to Section 608.423 of the Florida Statutes, even if the Members of a limited liability company do enter into an Operating Agreement, certain rights attendant to being a Member of a company, including the right to obtain documents that is asserted in this count of the Second Amended Complaint, may not be waived or restricted.

6

23.  The Members of CPD did enter into an Operating Agreement, which is attached hereto. (Exhibit H)

24.  However, the preamble to the Operating Agreement states as follows:

> This Operating Agreement becomes effective upon the completion and conversion of the construction financing into permanent financing for the Building located at 2926 Cortez Street, Fort Lauderdale, Florida.  The projected completion date of the Cortez project shall be on or around March 1, 2010.

25.  In spite of the effective date provision, and the fact that the condition precedent did not occur, the defendants have themselves acted as if, and made statements consistent with, the Operating Agreement having become effective, and have invoked the Operating Agreement to justify actions taken by them to the detriment of the plaintiffs.

26.  The question of whether, and to what extent, the Operating Agreement has come into effect by virtue of the conduct and representations of the defendants is an issue of law to be determined during the course of this litigation, and in asserting the right to receive documents in this first count of the Second Amended Complaint, the plaintiffs do not rely upon the existence of, or the terms of, an Operating Agreement, but rather on the statutory rights attendant to the fact of their respective ownership of one-third of CPD.

27.  At all times since the plaintiffs purchased their ownership interest in CPD, defendants Talat Radwan and Jason Radwan, acting both as individuals and as authorized agents of defendant Cortez Holding, have held themselves out as the managers of the company, have exercised total control over its operations, and have maintained whatever documents exist with regard to the operation and activities of CPD.

7

28.  Section 608.4101(1) of the Florida Statutes requires a limited liability company to

maintain the following records:

> "(a) A current list of the full names and last known business, residence, or mailing addresses of all members, managers, and managing members.
>
> "(b) A copy of the articles of organization, all certificates of conversion, and any other documents filed with the Department of State concerning the limited liability company, together with executed copies of any powers of attorney pursuant to which any articles of organization or certificates were executed.
>
> "(c) Copies of the limited liability company's federal, state, and local income tax returns and reports, if any, for the 3 most recent years.
>
> "(d) Copies of any then-effective operating agreement and any financial statements of the limited liability company for the 3 most recent years.
>
> "(e) Unless contained in the articles of organization or the operating agreement, a writing setting out:
>
> "1. The amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and which each member has agreed to contribute.
>
> "2. The times at which or events on the happening of which any additional contributions agreed to be made by each member are to be made.
>
> "3. Any events upon the happening of which the limited liability company is to be dissolved and its affairs wound up."

29.  Pursuant to the foregoing, CPD is required, in all events, to maintain the documents

listed above in Subsections (1)(a) through (1)(d).

30.  Inasmuch as the Articles of Organization of CPD (Exhibit A) do not set out the items listed in Subsection (1)(e), and inasmuch as the defendants have maintained for the purposes of this litigation that the Operating Agreement has never become effective, CPD is also required to maintain each of the documents listed in Subsection (1)(e).

31.  Section 608.4101(2) of the Florida Statutes codifies the unqualified right of the Members of a limited liability company to inspect and copy the aforesaid records.

32.  The plaintiffs have made numerous demands for the inspection of the aforesaid records, but all such demands have been either ignored or denied, and to this day the plaintiffs, who collectively own the majority share of CPD, have been denied access to the company's records.  The verification page executed by Jeffrey Bronster, Esq. at the end of this Second Amended Complaint (and incorporated herein by reference) details the aforesaid demands.

33.  Additionally, Section 608.1410(3) requires a limited liability company to provide the following information to all Members:

> "(a) Without demand, information concerning the limited liability company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter; and
>
> "(b) On demand, other information concerning the limited liability company's business or affairs, except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances."

34.  Notwithstanding the foregoing, the defendants have failed and refused to provide to the plaintiffs information reasonably required by them for the proper exercise of their rights as Members of CPD, and such other information as has been demanded of them concerning the company's business and affairs.

9

35.  The rights of the plaintiffs, as Members of CPD, to inspect the aforesaid documents is absolute as a matter of law, and the plaintiffs are entitled to enforce the provisions of Section 608.4101 without any further demonstration of need, simply by virtue of their status as Members of the company.

36.  Nevertheless, the plaintiffs, both individually and proceeding in right of CPD, require the production of the aforesaid documents in order to determine the full scope of the defendants' diversion, misuse, and conversion of the assets of CPD, all as set forth in greater detail herein.

WHEREFORE, plaintiffs demand judgment for the following:

(1) a declaratory judgment declaring the defendants in violation of Section 608.1410 of the Florida Statutes on the basis of their failure to afford the plaintiffs access to company documents as required by statute;

(2)  preliminary and permanent injunctive relief compelling the defendants to produce certain records, to provide an accounting, and to provide such other information as plaintiffs may be deemed to be entitled to under of Section 608.1410 of the Florida Statutes;

(3) attorney's fees;

(4) costs of suit;

(5) such further relief as the Court deems just and proper.

## COUNT II

## Breach of Duty

1.  Plaintiffs  adopt and reallege the identification paragraphs set forth above as paragraphs 1-10 of the Jurisdiction and Venue section, as if fully set forth herein.

706832v1 997083 0001

2.  Plaintiffs adopt and reallege paragraphs 2-15 of Count I of this Second Amended Complaint, detailing the acquisition of their respective ownership interests in Cortez Property Development LLC ("CPD"), as if fully set forth herein.

3.  At all times since the plaintiffs' acquisition of their ownership interest in CPD, defendants Talat Radwan and Jason Radwan, acting individually and through Cortez Holding, have acted and held themselves out as managers of CPD, and have exercised control over the operations of CPD, to the exclusion of the plaintiffs.

4.  Cortez Holding, as a Member of CPD, and the individual defendants, who acted as managers of CPD, had a fiduciary duty to the plaintiffs to operate the company and preserve its assets for the benefit of all of the members.

5.  Cortez Holding, acting through Talat Radwan and Jason Radwan, violated this fiduciary duty to the plaintiffs.

6.  Pursuant to Section 608.4225 of the Florida Statutes, Cortez Holding and both Talat Radwan and Jason Radwan owed a duty of loyalty to CPD and to the plaintiffs as Members thereof.

7.  The aforesaid duty of loyalty included accounting to CPD and holding as trustee any property acquired in the conduct of CPD's business.

8.  Cortez Holding, acting through Talat Radwan and Jason Radwan, violated this fiduciary duty to the plaintiffs.

9.  Pursuant to Section 608.4225 of the Florida Statutes, Cortez Holding and both Talat Radwan and Jason Radwan also owed a duty of care to CPD and to the plaintiffs as Members thereof.

706832v1 997083 0001

10. The aforesaid duty of care included refraining from grossly negligent or reckless conduct, intentional conduct, and knowing violations of law.

11. The conduct of the defendants constituting violations of the aforesaid duties included, but was not limited to, a failure to account to CPD and its Members.

12. The conduct of the defendants constituting violations of the aforesaid duties included, but was not limited to, failing to preserve its assets for the benefit of its Members.

13. At all times relevant to this Second Amended Complaint, the real property referred to as "the Cortez Hotel project" was owned by CPD, and has had rent-paying tenants.

14. The defendants have collected rent from the property on an ongoing basis, but have never deposited such rent in any account in the name of CPD, or accounted to the plaintiffs for such rental income.

15. Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, the defendants have diverted hundreds of thousands of dollars, and possibly in excess of $750,000, to bank accounts under their exclusive control, and have misappropriated the funds derived from the rents that were payable to CPD.

16. Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, the defendants, using money that belonged to CPD, purchased property sometimes referred to as "Sun Terrace," and sometimes referred to as "the Breakers Hotel project," located at 619 Breakers Avenue in Fort Lauderdale.

17. Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, the defendants collected hundreds of thousands of dollars in rent from the tenants of the Sun Terrace property.

12

18.   Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, the defendants sold Sun Terrace for a profit of approximately half-a-million dollars.

19.   The information provided to the plaintiffs as to Sun Terrace is corroborated by the following evidence:

(a) In an email sent to the plaintiffs by Jason Radwan in 2010, Jason Radwan himself stated that he had used the assets of CPD to invest in two other projects on behalf of CPD, one of which he identified as the "Breakers Hotel project";

(b) The real property records of Broward County show that the property was purchased on March 20, 2009 for $1,000,000, and sold again on June 24, 2011 for $1,565,000.

(c) However, despite Jason Radwan's admission that the property was purchased on behalf of CPD, and with the funds of CPD, the property records show that it was actually bought and subsequently sold in the name of the Radwans' own company, defendant Cortez Holding.

20.   Despite the foregoing, the defendants have refused to account to the plaintiffs for the hundreds of thousands of dollars they received in rents from the Breakers Hotel property, or for the $565,000 profit they recognized on the sale of the property.

21.   In addition to all of the foregoing, the conduct of the defendants constituting violations of the aforesaid duties included, but was not limited to, violations of state and federal law, by virtue of their failure to file tax returns on behalf of CPD, thereby exposing CPD and its Members to potential civil and criminal liability.

22.   The full scope of the defendants' violations of duty cannot be determined by the plaintiffs until such time as the defendants provide the books and records of, and relating to CPD.

706832v1 997083.0001

WHEREFORE, plaintiffs demand judgment for the following:

(1) such preliminary and permanent injunctive relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

(3) punitive damages;

(4) attorneys' fees and costs of suit;

(5) such further relief as the Court deems just and proper.

## COUNT III

## Fraud

1. Plaintiffs adopt and reallege the identification paragraphs set forth above as paragraphs 1-10 of the Jurisdiction and Venue section, as if fully set forth herein.

2. During 2007, defendants Talat Radwan and Jason Radwan, acting individually and on behalf of Cortez Holding Group, approached each of the plaintiffs to solicit their participation in a Florida investment venture.

3. The defendants informed each of the plaintiffs that a company known as Cortez Property Development LLC ("CPD") was owned by an individual named Morton Katz, and that CPD in turn owned a specific piece of property in Fort Lauderdale that was to be developed as a hotel, sometimes referred to as "the Cortez Hotel project."

14

4. The defendants further informed the plaintiffs that CPD could be purchased from Katz for approximately $12,000,000, with the purchasers thereby also acquiring the aforesaid real property, free and clear of any encumbrances, for development.

5. The plan proposed by the defendants was that three investors, one of which would be Cortez Holding Group, would each put up $6,000,000, and that this total amount of $18,000,000 would be used for the purchase of CPD from Katz, with the remainder to be used for the construction of the proposed hotel.

6. The defendants further represented that a major hotel chain had already entered into an agreement with CPD permitting it to run a hotel on the property under the flag of the hotel chain.

7. The defendants further represented that the property owned by CPD on which the hotel was to be built was, at that time, income-producing rental property for CPD, and that the plaintiffs would therefore receive the benefit of such rental income for as long as the property continued to generate it.

8. As a result of each of these representations, and of the cumulative representations made by the defendants, Shairco agreed to participate in the venture as a one-third owner.

9. As a result of each of these representations, and of the cumulative representations made by the defendants, Mohammad Al Nassar, who was affiliated both with a company known as Remel and a company known as Al-Ghena, agreed that he or one of his companies would participate in the venture as a one-third owner.

10. After Shairco and Mohammad Al Nassar agreed to participate in the venture, each as one-third owners of Shairco, defendant Cortez Holding purportedly purchased CPD, and then sold one-third of it to plaintiffs Shairco and Al-Ghena, respectively.

15

11.   Consequently, and in reliance upon each of the aforesaid representations, on or about October 30, 2007, Mohammad Al Nassar executed a purchase agreement, also signed by Talat Radwan, whereby Mohammad Al Nassar or his assignee, which ultimately was Al Ghena, would purchase one-third of the ownership interest of CPD from Cortez Holding.  (Exhibit B).

12.   As a further consequence, and also in reliance upon each of the aforesaid representations, on or about December 12, 2007, a representative of Shairco executed a purchase agreement, also signed by Talat Radwan, whereby Shairco would purchase one-third of the ownership interest of CPD from Cortez Holding.  (Exhibit E).

13.   Thereafter, at the instruction of Talat Radwan, Al-Ghena and Shairco each wired a total of $6,000,000 into an escrow account, all of which was subsequently released to Cortez Holding.

14.   By separate letters dated January 15, 2008, Talat Radwan, on behalf of Cortez Holding, confirmed to Al-Ghena and Shairco that each had become a one-third owner of CPD, and provided an executed stock certificate memorializing such ownership.  (Exhibits C-D, F-G)

15.   The defendants confirmed to the plaintiffs their receipt of the money, and informed them that Cortez Holding had similarly put up its own $6,000,0000 contribution to the CPD venture pursuant to the verbal agreement described above.

16.  Unbeknownst to the plaintiffs, the statements made to them by Talat and Jason Radwan, each acting with the knowledge and consent of the other, and each acting both individually and on behalf of Cortez Holding, were materially false in numerous respects, including the following:

706832v1 997083.0001

(a)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, Morton Katz did not own CPD at the time of the 2007 negotiations, and in fact never owned CPD;

(b)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, and as confirmed by CPD's Articles of Organization (Exhibit A),that company was formed in 2005 by a business associate of the Radwans, Oon Teong Ko;

(c)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, Morton Katz was actually a "hard money lender" who had loaned money to Oon Teong Ko;

(d)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, the Radwans, through Cortez Holding, had acquired CPD from Oon Teong Ko well before the 2007 negotiations with the plaintiffs;

(e)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, that company had acquired the real property for the hotel development for far less than $12,000,000, and in fact for far less than the $10,000,000 that the Radwans later claimed was the purchase price;

(f)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, contrary to the representations made by the defendants, the property was not owned free and clear, but was subject to a mortgage on which either Talat Radwan or Cortez Holding was obligated, and which remains unsatisfied even through the date of the filing of this Second Amended Complaint, thereby encumbering the real property owned by CPD;

(g)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, and upon emails sent by Jason Radwan himself, the Radwans and Cortez Holding failed to contribute any part of their $6,000,000 commitment to CPD, and in fact took for themselves the entire $12,000,000 contributed by the plaintiffs as the purchase price for their ownership interest in CPD;

(h)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, although the Radwans had engaged in discussions with hotel chains, at no time had they ever obtained or entered into any contract or agreement with a hotel chain;

(i)  Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, the rental income from CPD's property was not paid to or retained by CPD, but was instead deposited into bank accounts in the names of other companies over which the Radwans exercised dominion and control.

17.  Although the aforesaid representations were made verbally, in 2010 Jason Radwan sent a written "Investment Summary" to the plaintiffs reiterating some of the same false representations, including the past ownership of CPD and the purchase price of the property. (Exhibit I)

18.  Furthermore, the plaintiffs and defendant Cortez Holding entered into an Operating Agreement for CPD.  (Exhibit H)

19.  Although the legal issue as to whether or not the terms of the Operating Agreement ever went into effect, as set forth in more detail in Paragraphs 23-27 of Count One of this Second Amended Complaint, which are incorporated herein by reference, the terms of the agreement,

which was prepared either by the Radwans or at their request, serve as written evidence of the misrepresentations made by the defendants.

20.  By way of example only, Paragraph A of the Operating Agreement states, "The Members desire to form a limited liability company under the Florida Limited Liability Act," a statement designed to conceal from the plaintiffs that CPD was already long-since owned by the Radwans.

21.  Similarly, by way of example only, Paragraph 2.7 of the Operating Agreement stated that Cortez Holding would be the "Initial Manager" of CPD, thereby contributing to the false impression that CPD was a new company, rather than an ongoing one.

22.  By way of example only, the Operating Agreement also memorialized the $6,000,000 contribution to be made by each company towards the acquisition of CPD and the development of the hotel project, despite the fact that Cortez Holding had no intention of making, and never did make, any such contribution.

23.  Each of the aforesaid false statements was made by the defendants with knowledge of the falsity thereof, and with the intention that the plaintiffs rely thereupon.

24.  The plaintiffs did in fact rely upon each of the aforesaid representations to their detriment, whereby they have been damaged.

WHEREFORE, plaintiffs demand judgment for the following:

(1) such  preliminary and permanent injunctive relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

19

(3) treble damages;

(4)  attorneys' fees and costs of suit;

(5) such further relief as the Court deems just and proper.

## COUNT IV

### Conversion

1.  Plaintiffs  adopt and reallege the identification paragraphs set forth above as paragraphs 1-10 of the Jurisdiction and Venue section, as if fully set forth herein.

2.  Each of the plaintiffs is a Member and one-third owner of Cortez Property Development LLC ("CPD").

3.  Plaintiffs adopt and reallege paragraphs 2-15 of Count I of this Second Amended Complaint, detailing the acquisition of their respective ownership interests in Cortez Property Development LLC, as if fully set forth herein.

4.  At all times since the plaintiffs' acquisition of their ownership interest in CPD, CPD has been the owner of income-producing rental property in Fort Lauderdale.

5. Based upon information provided to the plaintiffs by a third party who personally participated in affairs of CPD, the defendants have been collecting the rent payments generating by the aforesaid income-producing rental property owned by CPD on a monthly basis, for a possible total in excess of $750,000, and diverting the funds for their own use.

6.  The defendants had a statutory, common law, and fiduciary duty to deliver the rent money to CPD, which was legally titled to receive it as the owner of the property.

7.  Nevertheless, the defendants failed to deliver any of the aforesaid rent money to CPD, depositing it instead into bank accounts in the names of other companies, under the exclusive control of the defendants, thereby converting the said funds.

20

706832v1 997083 0001

8.  In 2010, the defendants, using the funds of CPD and acting on behalf of CPD, purchased a property referred to as "the Breakers Hotel project," as set forth in further detail in Paragraphs 16-20 of Count II of this Second Amended Complaint, which are adopted and realleged as though fully set forth herein.

9.  The defendants, although using CPD's funds, purchased the property in the name of Cortez Holding.

10.  Any rents collected from the Breaker's property, and any profit made on the subsequent sale of the property, were legally the property of CPD.

11.  The defendants had a statutory, common law, and fiduciary duty to account to the plaintiffs for any money received from the Breakers investment, and to deliver such funds to CPD.

12.  Nevertheless, the defendants failed to account to the plaintiffs or to deliver any of the aforesaid funds to CPD, instead misappropriating such funds to their own use and control, thereby converting the said funds.

13.  The investment summary from Jason Radwan (Exhibit I) also stated that CPD funds had been used to invest in a mortgage venture.

14.  The defendants had a statutory, common law, and fiduciary duty to account to the plaintiffs for any money received from such investment, and to deliver such funds to CPD.

15.  Nevertheless, the defendants failed to account to the plaintiffs or to deliver any of the aforesaid funds to CPD, instead misappropriating such funds to their own use and control, thereby converting the said funds.

21

16.  The full scope of the defendants' conversion of funds and other assets belonging to the plaintiffs cannot be determined by the plaintiffs until such time as the defendants provide the books and records of, and relating to CPD.

17.  The aforesaid conduct of the defendants also constitutes criminal theft, as defined by Section 812.014 of the Florida Statutes.

18.  Pursuant to Section 772.11 of the Florida Statutes, plaintiffs are entitled to bring a civil action for treble damages for the violation of Section 812.014.

19.  However, because of the defendants' refusal to provide corporate documents, the plaintiffs do presently not have sufficient information to send the demand letter required as a predicate of the filing of a Section 772.11 count, and reserve the right to send the demand letter, and to add such claim, upon receipt of such information in the course of discovery.

WHEREFORE, plaintiffs demand judgment for the following:

(1) such  preliminary and permanent injunctive relief as my be necessary to compel the defendants to produce certain records, to provide an accounting, and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

(3) punitive damages;

(4)  attorneys' fees and costs of suit;

(4) such further relief as the Court deems just and proper.

706832v1 997083 0001

## COUNT V

### Unjust Enrichment

1.  Plaintiffs  adopt and reallege the identification paragraphs set forth above as paragraphs 1-10 of the Jurisdiction and Venue section, as if fully set forth herein.

2.  Each of the plaintiffs is a Member and one-third owner of Cortez Property Development LLC ("CPD").

3.  Plaintiffs adopt and reallege paragraphs 2-15 of Count I of this Second Amended Complaint, detailing the acquisition of their respective ownership interests in Cortez Property Development LL, as if fully set forth herein.

4.  Plaintiffs adopt and reallege paragraphs 3-16 (inclusive of its subparts) of Count III of this Second Amended Complaint, detailing the false and misleading statements made by the defendants to induce the plaintiffs to each invest the amount of $6,000,000, as if fully set forth herein.

5.  The aforesaid false representations made by the defendants induced the plaintiffs to substantially over-pay for their respective one-third shares of the CPD, and to the extent of such overpayment, which cannot be precisely quantified without further discovery, the defendants have been unjustly enriched.

6.  From January 2008 through the present, the defendants have misappropriated hundreds of thousands of dollars of rental income from real property owned by CPD referred to as the "Cortez Hotel project," as set forth in more detail in Paragraphs 4-7 of Count IV, the allegations of which are hereby adopted and realleged, as though fully set forth herein.

7.  To the extent that the rental income, in whole or in part, was the property of CPD, the defendants have been unjustly enriched by virtue of their misappropriation thereof.

706832v1 997083 0001

8.  Over a period of approximately two years, the defendants misappropriated hundreds of thousands of dollars of rental income and over half-a-million dollars in profit from the sale of real property known as "the Breakers Hotel project," which was purchased using the funds of CPD but in the name of Cortez Holding, as set forth in more detail in Paragraphs 16-20 of Count II, the allegations of which are hereby adopted and realleged, as though fully set forth herein.

9.  To the extent that the aforesaid rental income and sale proceeds were, in whole or in part, the property of CPD, the defendants have been unjustly enriched by their misappropriation thereof.

10.  Pursuant to the admissions made by Jason Radwan in a 2010 document titled, "Cortez Project Investment Summary" (Exhibit I), the defendants also used the funds of CPD for a mortgage-related investment.

11.  To the extent that the defendants have derived a financial benefit from any such investment, they have appropriated money that rightfully belongs to CPD, and have thereby been unjustly enriched.

WHEREFORE, plaintiffs demand judgment for the following:

(1) such  preliminary and permanent injunctive relief as my be necessary to compel the defendants to produce certain records, to provide an accounting, and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

(3)  attorneys' fees and costs of suit;

(4) such further relief as the Court deems just and proper.

## JURY DEMAND

The plaintiffs hereby demand a trial by jury as to all issues asserted in the pleadings so triable as of right.

/s/ **Jeffrey A. Bronster**

Jeffrey A. Bronster, Esq.
JEFFREY A. BRONSTER, PC
17 Wendell Place
Fairview, New Jersey 07022
(201) 945-2566
jbronster@bronsterlaw.com
Counsel for the Plaintiffs

Dated:   Fairview, New Jersey
         January 7, 2014

/s/ **Paul O. Lopez**

Paul O. Lopez, Esq.
TRIPP SCOTT
110 SE Sixth Street
Fort Lauderdale, FL 33301
(954)525-7500
pol@TrippScott.com
Local Counsel for the Plaintiffs

Dated:   Fort Lauderdale, Florida
         January 7, 2014

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 7, 2014, I electronically filed and served this Second Amended Complaint with verifications and exhibits via transmission of Notice of Electronic Filing generated by CM/ECF and via email to Beth-Ann E. Krimsky, Esq. (beth-ann.krimsky@gmlaw.com) and Stacey Schulman, Esq. (stacey.schulman@gmlaw.com) of Greenspoon Marder, P.A., and Shaji M. Eapen, Esq. (SEapen@morganlawfirm.com ) of Morgan Melhuish Abrutyn, *counsel for Defendants*.

/s/ Paul O. Lopez, Esq.
Paul O. Lopez, Esq.

25

706832v1 997083.0001

## <u>VERIFICATION</u>

I, Kamal Halal, hereby verify  under penalty of perjury that the allegations of this Second

Amended Complaint are true and accurate to the best of my knowledge and belief.



_____
KAMAL HALAL

## VERIFICATION

I, Jeffrey A. Bronster, counsel for the plaintiffs in the above-captioned action, pursuant to the requirement of Section 608.601(2) of the Florida Statutes, hereby verify under penalty of perjury that prior to the filing of the original Complaint in this action, I made demands upon the defendants for certain actions, which were either refused or ignored.

Specifically, I made demands for the production of certain records and for an accounting for certain funds, including the $6,000,000 contribution to the venture that was to have been made by Cortez Holding Group. The details of the demands that I made and the defendants' responses are as follows, and the documents referred to herein are attached to this Second Amended Complaint as Exhibit J:

(a) On November 2, 2011, I wrote to Talat Radwan and to Jason Radwan, requesting access to, and inspection of, the books and records of the company;

(b) On November 9, 2011, Jason Radwan left a voicemail message for me, and followed up the next day with an email;

(c) After an exchange of emails, on November 11, 2011 I had a telephone conversation with Jason Radwan regarding my request to inspect the records. I offered to travel to California or to Florida, as might be necessary, to conduct the inspection, or to allow the defendants to either bring or send copies of the documents to New Jersey. Jason Radwan promised to call me back with a decision, but did not do so;

(d) On November 15, 2011, I called Jason Radwan. He stated that he intended to hire an attorney to have him organize and go through all of the documents, and that the attorney would then contact me to discuss what documents would be produced. I documented the conversation in detail in an email sent that same day;

27

(e)  On November 20, 2011, I received a telephone call from Jason Radwan, who now agreed to copy the documents I had requested and to send them to New Jersey.  He added that the books and records requested were very extensive and, and that he needed time to organize them;

(f) I asked Jason Radwan to overnight whatever documents he could, and to continue producing documents as he continued to organize them; he agreed to call me back to advise me as to the progress of the document production.  Not receiving the promised phone call, I initiated a further exchange of emails;

(g)  In the new emails, I also requested an explanation as to why Cortez Holding had never put up the $6,000,000 that it had committed to.  Mr. Radwan never provided an explanation;

(h)  On or about November 30, 2011, I plaintiffs' counsel received an overnight package from Jason Radwan containing a CD-Rom disk with the following contents:  13 pdf. files, of which 12 could be opened; two folders apparently containing photographs of the hotel site, which could be only partially opened; and a large folder in compressed ("zip") format that was corrupted, and which could not be opened at all;

(i)  None of the documents provided on the CD-Rom were financial documents, nor were they responsive to the demand that I had made on behalf of the plaintiffs for the production of the books and records of the company;

(j)  In a letter that I emailed to Jason Radwan on December 6, 2011, I detailed the

contents of the disk, informed Jason Radwan that what he had sent did not comply with the

plaintiffs' demand to produce the books and records of the LLC, and renewed the plaintiffs'

demand to be permitted to inspect the books and records of the company.

(k) The requested documents were never produced, and no inspection was ever permitted.


/s/ **Jeffrey A. Bronster**
_____
JEFFREY A. BRONSTER, ESQ.


Dated:    Fairview, New Jersey
          January 7, 2014


29