**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**13-61557-CIV-DIMITROULKAS/SNOW**

AL-GHENA INTERNATIONAL CORP. and
SHAIRCO FOR TRADING, INDUSTRY, AND
CONTRACTING, individually and derivatively
as Members in the right of CORTEZ PROPERTY
DEVELOPMENT, LLC,

       Plaintiffs,

vs.

TALAT RADWAN, JASON RADWAN, and
CORTEZ HOLDING GROUP, INC.,

       Defendants.

_____/

## THIRD AMENDED COMPLAINT

Plaintiffs, AL-GHENA INTERNATIONAL CORP., a corporation of the Commonwealth

of Dominica, and SHAIRCO FOR TRADING, INDUSTRY AND CONTRACTING, a

corporation of the Kingdom of Saudi Arabia, each acting individually on behalf of themselves

and derivatively as Members of, and in right of CORTEZ PROPERTY DEVELOPMENT LLC ,

a Florida limited liability company, by and through their undersigned counsel, hereby file this

Third Amended Complaint against the Defendants, TALAT RADWAN, JASON RADWAN,

and CORTEZ HOLDING GROUP INC., and state as follows:

### JURISDICTION AND VENUE

1. Plaintiff Al-Ghena International Corp. ("Al-Ghena") is a corporation of the

Commonwealth of Dominica, having its principle place of business in the State of Kuwait at

Fahed Al Salem Street, Al-Nassar Tower, Al-Qibla, Kuwait.

1

2. Plaintiff Shairco for Trading, Industry and Contracting ("Shairco") is a corporation of the Kingdom of Saudi Arabia, having its principle place of business at the Shairco Building, Arafat Street, Al Hamraa District, Jeddah 21413, Saudi Arabia.

3. Cortez Property Development LLC ("CPD") is a Florida closely-held limited liability company, of which each of the plaintiffs is a Member, each having a one-third ownership interest.

4. Plaintiffs Shairco and Al-Ghena each bring this action individually, and derivatively in the right of CPD.

5. Kamal Halal, who has verified this complaint for the purpose of pursuing the plaintiffs' derivative claims, is a manager of plaintiff Shairco.

6. Defendant Talat Radwan is a citizen of the state of California.

7. Defendant Jason Radwan, the son of Talat Radwan, is a citizen of the state of California.

8. Defendant Cortez Holding Group Inc. ("Cortez Holding") is a Florida corporation, owned and operated by defendants Talat Radwan and Jason Radwan (collectively "the Radwans"), presently having its principle address at 2926 Cortez Street, Fort Lauderdale, Florida.

9. The amount in controversy in this action is in excess of $75,000.00, exclusive of attorney's fees and costs.

10. Based upon the citizenship of the parties, this Court has diversity jurisdiction over the action pursuant to 28 U. S. C. § 1332.

11. Venue is proper pursuant to 28 U. S. C. § 1391, as defendant Cortez Holding has its principal address in Broward County, which is also the location of the real estate that is the subject of this action.

## COUNT I

### Fraudulent Inducement
### (Al-Ghena and Shairco individually)

#### A. The Formation of CPD

12.     Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

13.     On December 12, 2005, Cortez Property Development LLC ("CPD") was formed by the filing of Articles of Organization with the Florida Secretary of State. (Exhibit A)

14. At the time of its formation, CPD was owned entirely by Oon Teong Ko, commonly referred to as "O.T.", a Chinese national living in Fort Lauderdale, Florida.

15. At or about the time of CPD's formation, Ko became indebted to an individual by the name of Morton Katz, a Canadian national who maintains a part-time residence in Highland Beach, Florida.

16. Contrary to representations made by the defendants as set forth herein, at no time was Morton Katz ever an owner of any part of CPD, nor was he a manger thereof, nor was he otherwise involved in the operation or business affairs of CPD.

17. Ko formed CPD in 2005 for the purpose of acquiring two adjacent parcels of land in Fort Lauderdale, approximately one block from the beach, demolishing the existing structures, and developing the property as a hotel.

18. On January 10, 2006, CPD purchased the first parcel from Gloria Nell Smith, for the price of $2,000,000.

3

19. On that same date, a mortgage was recorded in Broward County on the said property, documenting a mortgage loan to CPD from Farmers & Merchants State Bank.

20. On July 19, 2006, CPD purchased the second parcel from Gator East Wind Partners LLP, for the price of $4,250,000.

21. On that same date, a mortgage, signed by Oon Teong Ko on behalf of the debtor, was recorded in Broward County on the said property, documenting a mortgage loan of $4,200,000 to CPD from Pinebank, N.A. (Exhibit B)

22. Consequently, contrary to representations made by the defendants as set forth herein, the total purchase price of the two parcels that were to be used by CPD for the construction of the planned hotel was $6,250,000.

23. At the time that CPD acquired the two parcels, each had a building that was being used as a residential rental property.

24. After Ko acquired the properties on behalf of CPD, he continued to operate the properties and to collect monthly rent payments.

**B. The Radwans' Acquisition of CPD**

25. At the times relevant to this pleading, defendant Talat Radwan ("Radwan"), although a resident of California, also had business and personal dealings in the state of Florida, including the city of Fort Lauderdale.

26. At the times relevant to this pleading, Ko and defendant Radwan were friends and business associates.

27. After CPD's acquisition of the two parcels of real estate, Ko was experiencing financial difficulties, and solicited the assistance of Radwan.

4

28.  Consequently, in 2007, on an exact date unknown to the plaintiffs, Radwan agreed to provide financial assistance to Ko, the exact details of which are not presently known to the plaintiffs, in return for which Ko was to turn over the ownership of CPD.

29.  Consequently, on September 27, 2007, defendants Talat Radwan and Jason Radwan formed a Florida corporation, owned and operated by them, under the name Cortez Holding Group Inc. ("Cortez Holding").

30.  Shortly thereafter, on an exact date unknown to the plaintiffs, pursuant to his agreement with Radwan, Ko transferred his ownership of CPD to Cortez Holding

31.  At certain points thereafter, the defendants have claimed that Ko's involvement with CPD was short-lived, and that he has no continuing financial interest in the company.

32.  However, based upon information and belief, Ko had an agreement with the Radwans whereby he maintained, and continues to maintain, a concealed financial interest in CPD, and he has held himself out as being the Radwans' "partner" in the hotel project.

33.  Even after the transfer of ownership, Ko continued to participate in the affairs of CPD, including the presentations made to potential investors both in Florida and overseas.

34.  Ko's continued participation in CPD is also evidenced by the Limited Liability Company Annual Reports filed by CPD, which until as recently as 2013 were signed by Ko electronically, in his stated capacity as one of the company's "Managing Members/Managers." (Exhibit C)

## C.  The Solicitation of the Plaintiffs

35.  Following the Radwans' acquisition of CPD through Cortez Holding, they undertook the aggressive solicitation of potential investors, including holding lavish parties in Fort

5

Lauderdale on Radwan's yacht at which he provided food, entertainment, and escorts to potential investors.

36.   Radwan boasted to various people that he had the ability to raise "unlimited" amounts of money from investors in the Middle East because of his "connections" there, particularly his connections within the Saudi Royal Family.

37.   Two particular Middle East businessmen whom Radwan knew of, and was eager to solicit as investors in CPD, were Mostafa Alshair and Mohammed Al Nassar.

38.   Mostafa Alshair is a Saudi businessman whose family owns plaintiff Shairco, and Mohammed Al Nassar is a Kuwaiti businessman whose family owns plaintiff Al-Ghena, as well as a company known as Remel.

39.   Radwan was so eager to solicit Mostafa Alshair and his family that he offered to pay a "commission" to an individual named Abdulrachman Ali Binhizam, who works for a member of the Saudi Royal Family, to arrange an introduction to Mr. Alshair.

40.   The payment promised by Radwan to Mr. Binhizam was to be the lesser of $150,000, or 2.5% of whatever money was ultimately invested by or through Mr. Alshair.

41.   Upon information provided to the plaintiffs by Mr. Binhizam, Radwan ultimately paid him $5,000 towards the promised "commission," but then refused to make any further payments.

42.   In late 2007, a group that included Talat Radwan, Oon Teong Ko, and an individual named Bryan Cohen traveled to the Middle East to solicit investors for CPD.

43.   Bryan Cohen is a Florida commercial real estate developer and a friend of Talat Radwan, and was recruited by Radwan to assist him in making the presentation to investors.

6

44. Cohen participated with Radwan in the presentation that was made to Mr. Alshair and his company in Saudi Arabia, but did not participate in the separate presentation made to Mr. Al Nassar in Kuwait

45. However, Radwan was accompanied on the trip to Kuwait by Abdulrachman Ali Binhizam, who has been identified above.

46. Prior to traveling to Saudi Arabia, Radwan explained the details of the proposed solicitation to Bryan Cohen, so that he would be able to participate and assist in the presentation to the potential investors.

47. The statements and representations made by Radwan in the course of his respective presentations to Mr. Alshair and Mr. Al Nassar were made with the knowledge and consent of defendant Jason Radwan, and were made by Talat Radwan on behalf of himself, his son, and their company, defendant Cortez Holding.

48. Among the statements and representations made by and on behalf of Radwan to the potential investors was the following:

(a) that Morton Katz was the original owner of CPD, and continued to be the owner up to and including the date of the presentation;

(b) that Katz had acquired the two parcels of real estate for CPD for a total purchase price of $12,000,000;

(c) that CPD owed the two parcels free and clear of any liens or encumbrances;

(d) that CPD had a signed contract with a major hotel chain that would ultimately allow CPD to operate the hotel under the flag of that chain,

7

(e) that the investment group was to consist of three factions, one of which would be the Radwans themselves through their company, which would each acquire the ownership of one-third of CPD from Katz;

(f) that based upon the $12,000,000 that Katz had supposedly paid for the real estate, the three groups would each contribute $6,000,000, for a total contribution of $18,000,000, for the acquisition of CPD and start-up costs of the hotel project;

(g) that the capital to be contributed was intended to be used specifically, and exclusively, for the purchase of acquisition of CPD and for the development of the hotel project; and

(h) that the Radwans would manage the development of the hotel project for the benefit of all the owners.

49. Among the facts that Radwan deliberately failed to disclose to the potential investors were the following:

(a) that Oon Teong Ko, Radwan's close friend and business associate, had been the true original owner of CPD;

(b) that CPD had actually acquired the two parcels of real estate for a total purchase price of only $6,250,000;

(c) that the two parcels were, at the time of the presentation, encumbered by millions of dollars in mortgages; and

(d) that the Radwans had already acquired the ownership of CPD from Ko for millions of dollars less than the plaintiffs believed was to be paid for the company.

**D. The Fraudulent Inducement of the Plaintiffs**

50. The defendants, having undertaken to disclose material information to the plaintiffs in order to induce them to invest in CPD, had a legal duty to fully disclose all such material information to them.

51. The defendants engaged both in the making of fraudulent representations to, and in the fraudulent concealment of information from, each of the plaintiffs, which representations and omissions, individually and collectively, induced the plaintiffs to each invest $6,000,000 in CPD whereby they have been damaged, including each representation and omission described below.

**(i) The $12,000,000 purchase price**

52. The defendants' statement to the plaintiffs that CPD had purchased the two parcels of land for a total of $12,000,000, when in fact the true price was only $6,250,000, constituted a misrepresentation of material fact, and a failure to disclose the full material facts.

53. The defendants knew and should have known that the representation was false when made.

54. The defendants made the representation for the specific purpose of inducing plaintiffs to pay $6,000,000 each for their respective purchases of one-third ownership of CPD, believing that $12,000,000 represented the amount paid for, and the value of, the real estate that CPD owned.

55. The plaintiffs reasonably relied on defendants' representation as to the purchase price of the property, and on the basis of such reliance agreed to pay $6 million each, thereby substantially over-paying for their respective one-third ownership of CPD, and resulting in a

9

concealed multi-million-dollar windfall to the defendants, whereby the plaintiffs have been damaged.

### (ii) The ownership of CPD

56. The defendants' statement to the plaintiffs that Morton Katz was, and at the time of the presentation to the plaintiffs continued to be, the owner of CPD constituted a misrepresentation of material fact, and a failure to disclose the full material facts.

57. The defendants knew and should have known that the representation was false when made.

58. The defendants made the representation for the specific purpose of concealing from the plaintiffs that they had already acquired ownership of CPD, and to prevent the plaintiffs from discovering the true price that CPD had paid for the real estate, their inducing the plaintiffs to pay $6,000,000 each for their respective purchases of one-third ownership of CPD.

59. The plaintiffs reasonably relied on the defendants' representation as to ownership of CPD, and on the basis of such reliance agreed to pay $6 million each, thereby substantially over-paying for their respective one-third ownership of CPD, and resulting in a concealed multi-million-dollar windfall to the defendants, whereby the plaintiffs have been damaged.

60. The defendants' false representation to the plaintiffs as to the ownership of CPD is further evidenced by a document emailed to the plaintiffs by Jason Radwan in 2010, captioned, "Cortez Project Investment Summary," which was sent by the defendants in an effort to deflect the plaintiffs' efforts to obtain information about the financial affairs of CPD. (Exhibit D)

10

61.   In the Investment Summary, Jason Radwan stated that the three groups had purchased CPD through a "stock transfer" in 2008, and that the company was "previously owned by Mr. Morton Katz."

### (iii) **The Existing Mortgages**

62.   The defendants' statement to the plaintiffs that the two parcels of real estate were owned by CPD free and clear of any liens or encumbrances constituted a misrepresentation of material fact, and a failure to disclose the full material fact of the millions of dollars in existing mortgages.

63.   The defendants knew and should have known that the representation was false when made.

64.   The defendants made the representation for the specific purpose of inducing the plaintiffs to pay $6,000,000 each for their respective purchases of one-third ownership of CPD, ignorant of the fact that the value of the company's real estate was effectively millions of dollars less than was represented to them because of the existence of the mortgages.

65.   The plaintiffs reasonably relied on the defendants' representation as to the absence of liens or encumbrances, and on the basis of such reliance agreed to pay $6 million each, thereby substantially over-paying for their respective one-third ownership of CPD, and resulting in a concealed multi-million-dollar windfall to the defendants, whereby the plaintiffs have been damaged.

**(iv) <u>The commitment for six million dollars</u>**

66. The defendants' statement to the plaintiffs that each of the three groups would, at the outset of the venture, put up $6,000,000 for the purchase and operation of CPD constituted a misrepresentation of material fact.

67. Although the defendants' statement was not a representation of presently existing fact, it nevertheless constituted a fraudulent misrepresentation as to the defendants' actual intent at the time that it was made, inasmuch as the defendants knew that they had no intention of putting up their $6,000,000 share, and inasmuch as they believed that the inflated purchase price of the real estate that they had fraudulently conveyed to the plaintiffs would generate enough money to conceal the defendants' failure to contribute their own $6,000,000 share.

68. The defendants made the representation for the specific purpose of inducing the plaintiffs to pay $6,000,000 each for their respective purchases of one-third ownership of CPD, believing that it was to be matched by each of the other owners of CPD.

69. The plaintiffs reasonably relied on the defendants' representation of their intention to contribute their $6,000,000 share, thereby substantially over-paying for their respective one-third ownership of CPD, and resulting in a concealed multi-million-dollar windfall to the defendants, whereby the plaintiffs have been damaged.

70. The defendants' false representation as to their intention to contribute their $6,000,000 share is further evidenced by a document prepared by or on behalf of the defendants, and executed on behalf of each of the three groups on or about December 12, 2007, titled, "Operating Agreement for Cortez Property Development, LLC." (Exhibit E)

12

71. The Operating Agreement was intended to govern the management and operation of CPD during the construction phase of the hotel project, and by its own terms would not become effective unless and until certain permanent financing for the project was obtained.

72. The Operating Agreement, through its terms and its attached exhibit, confirmed that each company would be contributing $6,000,000 to the venture.

73. Although CPD never obtained permanent financing for the hotel project, and the Operating Agreement therefore never became effective, when the defendants presented it to the plaintiffs in December 2007 - - at which time the plaintiffs had yet to pay their respective $6 million shares - - it affirmed the plaintiffs' belief that the defendants intended, at the outset of the venture, to contribute the same $6,000,000 to the venture that the plaintiffs were contributing.

74. The defendants' false representation as to their present intention to contribute their $6,000,000 share is further evidenced by the fact six years later, as of the date of the filing of this pleading, the defendants have yet to make that contribution or any part of it, and have in fact repudiated any obligation to do so.

75. The defendants' false representation as to their present intention to contribute their $6,000,000 share is further evidenced by Jason Radwan's "Cortez Project Investment Summary," in which he falsely represented to the plaintiffs that an "$18,000,000 down payment" had been made by "the Group," thereby perpetuating the fraud that the defendants had matched the $6,000,000 contribution made by each of the plaintiffs.

**(v) The hotel chain agreement**

76.   The defendants' statement to the plaintiffs that CPD had entered into a written contract with a major hotel chain that authorized CPD to operate the hotel, once it was built, under the flag of that chain constituted a misrepresentation of material fact.

77.   The defendants knew and should have known that the representation was false when made.

78.   The defendants made the representation for the specific purpose of inducing plaintiffs to invest in CPD in the belief that CPD had already secured the valuable right to operate its hotel under the flag of a major hotel chain.

79.   The plaintiffs reasonably relied on defendants' representation as to the hotel chain agreement, and on the basis of such reliance agreed to purchase their respective one-third ownership of CPD, whereby the plaintiffs have been damaged.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually, each demand judgment against the defendants for the following:

(1) such preliminary and permanent injunctive and declaratory relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

(3) treble damages;

(4) attorneys' fees and costs of suit;

(5) such further relief as the Court deems just and proper.

## COUNT II

### Conversion
### (Al-Ghena and Shairco individually)

80.    Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

81.    Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and operated by Oon Teong Ko, which in 2006 purchased two adjoining parcels of real estate in Fort Lauderdale for the purpose of constructing a hotel, all as set forth in greater detail above in Paragraphs 12 through 24 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

82.    Subsequently, defendants Talat Radwan and Jason Radwan, through defendant Cortez Holding Group Inc., a Florida corporation that they owned and operated, acquired ownership of CPD from Oon Teong Ko, all as set forth in greater detail above in Paragraphs 25 through 34 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

83.    Following their acquisition of CPD, the defendants engaged in the recruitment of potential investors, culminating with their solicitation of Mostafa Alshair and Mohammed Ali Nassar and their respective companies, plaintiffs Shairco and Al-Ghena, all as set forth in greater detail above in Paragraphs 35 through 49 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

84.    The defendants induced the plaintiffs to each invest $6,000,000 for the purchase of a one-third ownership interest in CPD, through a serious of false representations and deliberate concealment of material facts, including the following:

15

(a) the misrepresentation of the price that CPD had paid for two parcels of real estate, all as set forth in greater detail above in Paragraphs 52 through 55 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein;

(b) the misrepresentation of the original owner of CPD, and the concealment of the defendants' acquisition of that ownership, all as set forth in greater detail above in Paragraphs 56 through 61 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein;

(c) the misrepresentation that CPD owned the two parcels of real estate free and clear of liens and encumbrances, and the concealment of the existence of millions of dollars in mortgages on the real estate, all as set forth in greater detail above in Paragraphs 62 through 65 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein;

(d) the misrepresentation of the defendants' present intentions by virtue of a commitment to contribute $6,000,000 to the venture, equal to the contribution to be made by each of the plaintiffs, knowing full we that the did not intend to make such contribution, all as set forth in greater detail above in Paragraphs 66 through 75 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein;

(e) the misrepresentation that CPD already had a written agreement whereby the hotel that CPD intended to build would be authorized to operate under the flag of a major hotel chain, all as set forth in greater detail above in Paragraphs 76 through 77 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

85. As a result of all of the aforesaid, plaintiffs Shairco and Al-Ghena each forwarded $6,000,000 to escrow accounts as directed by Talat Radwan, and the said funds were subsequently released to the defendants.

16

86. Because the respective investment of each of the plaintiffs was obtained through fraud, misrepresentation, and deception as set forth heretofore, the plaintiffs had an immediate right to the return of their money, and to the possession thereof.

87 Furthermore, because the respective investment of each of the plaintiffs was obtained through fraud, misrepresentation, and deception as set forth heretofore, the plaintiffs continue to have, through the date of the filing of this Third Amended Complaint, a present and immediate right to the return of their money, and to the possession thereof.

88. Alternatively, if and to the extent that the plaintiffs payed more than the fair value of their ownership interest in CPD as a result of the fraud, misrepresentation, and deception of the defendants as set forth heretofore, the plaintiffs had an immediate right to the return of that portion of their money that represented the over-payment and to the possession thereof, and continue to have, through the date of the filing of this Third Amended Complaint, a present and immediate right to the return of such over-payment, and to the possession thereof.

89. Nevertheless, the defendants have at all times failed and refused to return the plaintiffs' investment or any part thereof, and have thereby wrongfully deprived each of the plaintiffs of funds to which they have a present and immediate right of possession, whereby the plaintiffs have been damaged.

90. The aforesaid conduct of the defendants, in addition to constituting the commission of the tort of conversion, also constitutes criminal theft, as defined by Section 812.014 of the Florida Statutes.

91. Pursuant to Section 772.11 of the Florida Statutes, plaintiffs are entitled to bring a civil action for treble damages for the violation of Section 812.014, based upon the aforesaid acts of criminal theft.

92.     However, because the full scope and precise amount of such theft cannot be determined by the plaintiffs until such time as the defendants provide the books and records of and relating to CPD, the plaintiffs presently do not have sufficient information to send the demand letter required as a predicate for the filing of a Section 772.11 count, and reserve the right to send the demand letter and to add such claim to their pleadings, upon receipt of such information.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually, each demand judgment against the defendants for the following:

(1) such preliminary and permanent injunctive and declaratory relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate,

(2) compensatory and consequential damages;

(3) punitive damages;

(4) costs of suit;

(5) such further relief as the Court deems just and proper.

## COUNT III

### Unjust Enrichment
### (Al-Ghena and Shairco individually)

93.     Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

94.     Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and operated by Oon Teong Ko, which in 2006 purchased two

18

adjoining parcels of real estate in Fort Lauderdale for the purpose of constructing a hotel, all as set forth in greater detail above in Paragraphs 12 through 24 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

95.   Subsequently, defendants Talat Radwan and Jason Radwan, through defendant Cortez Holding Group Inc., a Florida corporation that they owned and operated, acquired ownership of CPD from Oon Teong Ko, all as set forth in greater detail above in Paragraphs 25 through 34 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

96.   Following their acquisition of CPD, the defendants engaged in the recruitment of potential investors, culminating with their solicitation of Mostafa Alshair and Mohammed Ali Nassar and their respective companies, plaintiffs Shairco and Al-Ghena, all as set forth in greater detail above in Paragraphs 35 through 49 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

97.   The defendants induced the plaintiffs to each invest $6,000,000 for the purchase of a one-third ownership interest in CPD, through a serious of false representations and deliberate concealment of material facts,  all as set forth in greater detail above in Paragraphs 52 through 77 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

98.   In particular, the defendants intentionally over-stated the amount that CPD had paid for two parcels of real estate by more than half-a-million dollars, as set forth above in Paragraphs 52 through 55, concealed the existence of millions of dollars of mortgages encumbering the properties as set forth above in Paragraphs 62 through 65, and intentionally misrepresented their

intention to contribute $6,000,000 to the venture, an amount equal to the contribution made by each of the plaintiffs, as set forth above in Paragraphs 66 through 75.

99   Plaintiffs Shairco and Al-Ghena each forwarded $6,000,000 to escrow accounts as directed by Talat Radwan, and the said funds were subsequently released to the defendants.

100.   As a result of the cumulative misrepresentations of the defendants, each of the plaintiffs paid far in excess of the fair value of their ownership interest in CPD, and such payments were received and retained by the defendants.

101.   Through their respective escrow payments as directed by Talat Radwan, and the subsequent turn-over of the funds to the defendants, the plaintiffs conferred a benefit on the defendants, which benefit was known to, accepted, and retained by the defendants.

102   Under the circumstances described heretofore, the defendants have, as a result of their misfeasance, been unjustly enriched, and it would be inequitable to permit the defendants to retain the plaintiffs' money.

103   Nevertheless, the defendants have at all times failed and refused to return the plaintiffs' investment or any part thereof, thereby wrongfully depriving each of the plaintiffs of funds to which  they have a present and immediate right of possession, whereby the plaintiffs have been damaged.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually, each demand judgment against the defendants for the following:

(1)  such preliminary and permanent injunctive and declaratory relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property

Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory damages;

(3) costs of suit;

(4) such further relief as the Court deems just and proper.

## COUNT IV

### Breach of Contract - Cortez Holding Group Inc.
### (Al-Ghena and Shairco individually)

104.    Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

## A. Background of the Contracts

105.  Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and operated by Oon Teong Ko, which in 2006 purchased two adjoining parcels of real estate in Fort Lauderdale for the purpose of constructing a hotel, all as set forth in greater detail above in Paragraphs 12 through 24 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

106.    Subsequently, defendants Talat Radwan and Jason Radwan, through defendant Cortez Holding Group Inc., a Florida corporation that they owned and operated, acquired ownership of CPD from Oon Teong Ko, all as set forth in greater detail above in Paragraphs 25 through 34 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

107.  Following their acquisition of CPD, the defendants engaged in the recruitment of potential investors, culminating with their solicitation of Mostafa Alshair and Mohammed Ali Nassar and their respective companies, plaintiffs Shairco and Al-Ghena, all as set forth in greater

detail above in Paragraphs 35 through 49 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

108.  The defendants induced the plaintiffs to each invest $6,000,000 for the purchase of a one-third ownership interest in CPD, through a serious of false representations and deliberate concealment of material facts, all as set forth in greater detail above in Paragraphs 52 through 79 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

**B.  Defendants' Contract with the Plaintiffs**

109.  Following the representations made by the defendants and in reliance theretofore, all as set forth above, Mostafa Alshair, Mohammed Al Nassar, and Talat Radwan entered into an agreement to invest in CPD.

110.  Pursuant to that agreement, CPD was to be owned equally be three factions: the Kuwaiti faction, which ultimately was Al-Ghena; the Saudi faction, which ultimately was Shairco; and the United States faction, through the Radwans' company, Cortez Holding.

111.  Pursuant to that agreement, the plaintiffs believed that each of the three factions would contribute $6,000,000 to be used to purchase CPD from Morton Katz, and for the initial expenses of CPD's hotel project.

112.  The plaintiffs' understanding of the agreement was based on the defendants' false representations that CPD was owned at that time by Morton Katz, and the plaintiffs were unaware that CPD had already acquired ownership of CPD from Oon Teong Ko, as set forth heretofore.

22

113.   Because Cortez Holding was the true owner of CPD, the contracts that Talat Radwan ultimately provided to the defendants were structured as purchase agreements, whereby each of the plaintiffs would buy one-third of the ownership interest in CPD from Cortez Holding.

114.   The plaintiffs, unaware that the defendants had misrepresented to them the history and the ownership of CPD, and relying on Talat Radwan to structure the acquisition of CPD in the interests of the three factions, and in accordance with their agreement, did not question the form of the contract, and were not alerted by it to the fact that Cortez Holding, even before its solicitation of the plaintiffs, had already acquired the ownership of CPD through an undisclosed agreement with Oon Teong Ko.

115. On or about October 30, 2007, defendant Talat Radwan, in his capacity as President of Cortez Holding, executed a contract, captioned "Purchase Agreement", whereby Mohammad Al Nassar or his assignee was to acquire one-third of the ownership interest of CPD. (Exhibit F)

116.   Thereafter, Mohammad Al Nassar assigned the Purchase Agreement to plaintiff Al-Ghena, which at the instructions of Talat Radwan, transferred six million dollars to an escrow account, which was subsequently released to defendant Cortez Holding

117. By letter dated January 15, 2008, Talat Radwan, on behalf of Cortez Holding, confirmed that Al-Ghena had become a one-third owner of CPD.  (Exhibit G)

118.   In confirmation of Al-Ghena's status as a Member of CPD, Cortez Holding provided to Al-Ghena a stock certificate, signed by Talat Radwan, reflecting Al-Ghena's one-third ownership of the company as of January 10, 2008.  (Exhibit H)

119.   On or about December 12, 2007, defendant Talat Radwan, in his capacity as President of Cortez Holding, executed a contract, captioned "Purchase Agreement",  whereby plaintiff Shairco was to purchase one-third of the ownership interest of CPD.  (Exhibit I)

23

120. Although the two Purchase Agreements differed in minor ways, they contained the same substantive terms.

121. Thereafter, at the instructions of Talat Radwan, Shairco transferred six million dollars to an escrow account, which money was subsequently released to defendant Cortez Holding.

122. By letter dated January 15, 2008, Talat Radwan, on behalf of Cortez Holding, confirmed that Shairco had become a one-third owner of CPD. (Exhibit J)

123. In confirmation of Shairco's status as a Member of CPD, Cortez Holding provided to Shairco a stock certificate, signed by Talat Radwan, reflecting Shairco's one-third ownership of the company as of January 10, 2008. (Exhibit K)

124. As evidenced by the Purchase Agreements, the January 15, 2008 letters from Talat Radwan, and the stock certificates, each of the plaintiffs paid $6,000,000 to Cortez Holding in return for a one-third ownership interest in CPD.

125. The plaintiffs' contractual acquisition of an ownership interest in CPD is further evidenced by a document sent by Talat Radwan to Al-Ghena in January 2011, captioned "Settlement Agreement." (Exhibit L)

126. The terms of the document acknowledge, and state as an undisputed fact, that Al-Ghena and Shairco are each one-third owners of CPD.

127. The preamble to the Settlement Agreement stated that Al-Ghena and Cortez holding were "each 33 and 1/3% owners of Cortez Property Development, LLC."

128. Paragraph 7 of the Settlement Agreement implicitly reaffirmed Al-Ghena's ownership of CPD, stating that, "In the future, if the Parties all agree in writing that they want to

Liquidate the Company Assets and dissolve all affairs for the Company, then the Company will be sold for the highest and best price at that time . . . ."

129. The final paragraph of the document acknowledges Shairco's ownership of one-third of CPD, stating, "This Agreement may become null and void if Shairco for Trading, Industry, and Contracting, the Saudi partner also owning 33 and 1/3% in the Company does not agree to this Settlement Agreement."

130. The only obligation imposed upon the plaintiffs in their respective contracts was the payment of $6,000,000, which each of the plaintiffs has already performed.

131. As to the defendants, however, the respective contracts imposed obligations other than, and beyond the conveyance of an ownership interest in CPD, such as the obligation for Cortez Holding to oversee and manage the construction of the proposed hotel.

132. As of the date of the filing of this Third Amended Complaint, CPD has not yet succeeded in obtaining the necessary approvals for the hotel project, and consequently, Cortez Holding's contractual obligations to the plaintiffs regarding the supervision and management of the construction process have not yet been met.

133. Nevertheless, Cortez Holding has repudiated the plaintiffs' respective ownership rights in CPD, and has acted in a manner designed to deny them such rights, and has thereby engaged in an anticipatory breach of the respective contracts.

134. The conduct of the Cortez Holding constituting such anticipatory breach by repudiation includes, but is not limited to, representations made on its behalf by counsel, during the course of this litigation, that the plaintiffs are not owners of CPD, and have never been owners of CPD, and as a result do not have any of the legal rights attendant to such ownership.

25

135. In reliance upon this anticipatory breach through the repudiation of the plaintiffs' respective contractual ownership rights, Cortez Holding has denied the plaintiffs access to company books and records, has denied the plaintiffs the financial benefits of the ownership of CPD, and has otherwise denied the plaintiffs their ownership rights, whereby the plaintiffs have been damaged.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually, each demand judgment against defendant Cortez Holding Group Inc. for the following:

(1) such preliminary and permanent injunctive and declaratory relief as my be necessary to enforce their contractual rights as owners of Cortez Property Development LLC, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

(3) costs of suit;

(4) such further relief as the Court deems just and proper.

**COUNT IV**

**Breach of Covenants - Cortez Holding Group Inc.**
**(Al-Ghena and Shairco individually)**

136. Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

137. Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and operated by Oon Teong Ko, which in 2006 purchased two adjoining parcels of real estate in Fort Lauderdale for the purpose of constructing a hotel, all as set forth in greater detail above in Paragraphs 12 through 24 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein

138.   Subsequently, defendants Talat Radwan and Jason Radwan, through defendant Cortez Holding Group Inc., a Florida corporation that they owned and operated, acquired ownership of CPD from Oon Teong Ko, all as set forth in greater detail above in Paragraphs 25 through 34 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

139.   Following their acquisition of CPD, the defendants engaged in the recruitment of potential investors, culminating with their solicitation of Mostafa Alshair and Mohammed Ali Nassar and their respective companies, plaintiffs Shairco and Al-Ghena, all as set forth in greater detail above in Paragraphs 35 through 49 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

140.   The defendants induced the plaintiffs to each invest $6,000,000 for the purchase of a one-third ownership interest in CPD, through a serious of false representations and deliberate concealment of material facts, all as set forth in greater detail above in Paragraphs 52 through 79 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

141.   Mostafa Alshair, Mohammed Al Nassar, and Talat Radwan, on behalf of their respective companies, entered into an agreement whereby each would purchase a one-third share of CPD, as set forth in detail above in Paragraphs 109 through 112 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

142.   Thereafter, Cortez Holding entered into a contract, captioned "Purchase Agreement," with each of the plaintiffs, whereby each purchased a one-third ownership interest in CPD for the price of $6,000,000, all as set forth in greater detail above in Paragraphs 113

through 129 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

143.  Pursuant to the common law of the state of Florida, each of the plaintiffs' respective contracts with Cortez Holding included implied covenants of good faith and fair dealing.

144.  Through their repudiation of the plaintiffs' ownership interests in CPD as set forth in greater detail above in Paragraphs 132 through 135 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein, the defendants have intentionally and tortiously breached the covenants of good faith and fair dealing, whereby the plaintiffs have been damaged.

145.  Furthermore, continuously from 2008 through the present, the defendants have engaged in a course of conduct designed to deprive the plaintiffs of the rights attendant to their contractual acquisition of an ownership interest in CPD, including, but not limited to, the right to corporate information, and have thereby intentionally and tortiously breached the covenants of good faith and fair dealing, whereby the plaintiffs have been damaged.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually, each demand judgment against defendant Cortez Holding Group Inc. for the following:

(1) such preliminary and permanent injunctive and declaratory relief as my be necessary to enforce their contractual rights as owners of Cortez Property Development LLC, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

(3) punitive damages;

(4) costs of suit;

28

(5) such further relief as the Court deems just and proper.

## COUNT V

### Breach of Fiduciary and Statutory Duties Duty
### (Al-Ghena and Shairco individually and Derivatively)

146.   Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

147.   Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and operated by Oon Teong Ko, which in 2006 purchased two adjoining parcels of real estate in Fort Lauderdale for the purpose of constructing a hotel, all as set forth in greater detail above in Paragraphs 12 through 24 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

148.   Subsequently, defendants Talat Radwan and Jason Radwan, through defendant Cortez Holding Group Inc., a Florida corporation that they owned and operated, acquired ownership of CPD from Oon Teong Ko, all as set forth in greater detail above in Paragraphs 25 through 34 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

149.   Following their acquisition of CPD, the defendants engaged in the recruitment of potential investors, culminating with their solicitation of Mostafa Alshair and Mohammed Ali Nassar and their respective companies, plaintiffs Shairco and Al-Ghena, all as set forth in greater detail above in Paragraphs 35 through 49 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

150.   The defendants induced the plaintiffs to each invest $6,000,000 for the purchase of a one-third ownership interest in CPD, through a serious of false representations and deliberate concealment of material facts, all as set forth in greater detail above in Paragraphs 52 through 79

29

of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

151. Each of the plaintiffs did in fact enter into a contract for the purchase of a one-third share of CPD, and did thereby become an owner of the company, all as set forth in greater detail above in Paragraphs 109 through 129 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

152. With the one exception set forth below, both Shairco and Al-Ghena have at all times since the execution of their respective Purchase Agreements, and continuing through the date of the filing of this Third Amended Complaint, maintained an ownership interest in Cortez Holding.

153. Prior to the filing of the original Complaint in this action, Shairco assigned it ownership rights in CPD to a New Jersey corporation fully-owned by Shairco, known as "Shairco New Jersey."

154. Prior to the filing of this Third Amended Complaint, that assignment has been reversed, such that the New Jersey corporation has assigned all ownership rights back to the original company that owned the shares, plaintiff Shairco for Trading, Industry and Contracting.

155. The plaintiffs each assert this cause of action individually on their own behalf, and derivatively in right of CPD.

156. Pursuant to the common law of the state of Florida, each of the defendants had a fiduciary duty to the plaintiffs, and to CPD itself.

157. Pursuant to Section 608.4225(1)(a) of the Florida Statutes, each of the defendants owed a duty of loyalty to the plaintiffs as Members of the LLC, and to CPD itself, which required the following of them.

30

"1. Accounting to the limited liability company and holding as trustee for the limited liability company any property, profit, or benefit derived by such manager or managing member in the conduct or winding up of the limited liability company business or derived from a use by such manager or managing member of limited liability company property, including the appropriation of a limited liability company opportunity.

"2. Refraining from dealing with the limited liability company in the conduct or winding up of the limited liability company business as or on behalf of a party having an interest adverse to the limited liability company.

"3. Refraining from competing with the limited liability company in the conduct of the limited liability company business before the dissolution of the limited liability company."

158.   Pursuant to Section 608.4225(1)(b) of the Florida Statutes, each of the defendants owed a duty of care to the plaintiffs as Members of the LLC, and to CPD itself, which is defined therein as "refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law."

159.   The defendants violated their fiduciary and statutory duties to the plaintiffs and to CPD through the specific acts set forth below.

### (i) The CPD rental income

160.   At the times relevant to this Third Amended Complaint, each of the two parcels of real property purchased by CPD for the development of a hotel had rent-paying tenants.

161.   The defendants have collected rent from the property on an ongoing basis, which constituted the property of CPD as landlord.

162.   Nevertheless, the defendants have never accounted to CPD for those rent payments or ensured that CPD would receive those rent payments, instead diverting them to their own

possession and use, depositing them into bank accounts under the control of the defendants, and in the name of one or more companies owned by the defendants.

163. Between the date of the plaintiffs' acquisition of their ownership interest in CPD and the date of the filing of this Third Amended Complaint, the defendants have diverted and misappropriated hundreds of thousands of dollars in rental payments from the CPD property, and have failed to account for such funds.

164. The aforesaid conduct of the defendants constituted a breach of their fiduciary duty to the individual plaintiffs and to CPD, whereby each has been damaged.

165. The aforesaid conduct of the defendants constituted a breach of their statutory duty of loyalty to the individual plaintiffs and to CPD, by failing to account for property derived in the conduct of CPD's business, by failing to hold as trustee company property derived in the conduct of CPD's business, whereby each has been damaged

166. The aforesaid conduct of the defendants constituted a breach of their statutory duty of care to the individual plaintiffs and to CPD, in that such conduct was grossly negligent, reckless, intentional, and constituted a knowing violation of law, whereby each has been damaged.

### (ii) The Breakers rental income and profit from sale

167. On March 20, 2009, using money that was the property of CPD, the defendants purchased a piece of real property located at 619 Breakers Avenue in Fort Lauderdale, referred to variously as "Sun Terrace" and as "the Breakers Hotel project," at a cost of $1,000,000.

168. At the time of the purchase, the Sun Terrace property included a rent-producing residential building.

169. In the "Cortez Project Investment Summary" emailed to the plaintiffs by Jason Radwan in 2010, Jason Radwan acknowledged that Sun Terrace had been purchased using the assets of CPD, and that the purchase had been made for the benefit of CPD and its Members.

170. Unbeknownst to the plaintiffs, however, although the defendants purchased Sun Terrace with CPD's money, they purchased it in the name of the Radwans' own company, Cortez Holding, as verified by the real property records of Broward County. (Exhibit M)

171. The defendants subsequently collected hundreds of thousands of dollars in rent from the tenants of Sun Terrace, which was rightfully the property of CPD.

172. Nevertheless, the defendants have never accounted to CPD for those rent payments or ensured that CPD would receive those rent payments, instead diverting them to their own possession and use, depositing them into bank accounts under the control of the defendants, and in the name of one or more companies owned by the defendants.

173. On March 20, 2009, the defendants sold Sun Terrace for $1,565,000, recognizing a profit of $565,000 on the sale which was rightfully the property of CPD.

174. Nevertheless, the defendants have never accounted to CPD for the sale proceeds or ensured that CPD would receive those funds, instead diverting them to their own possession and use through Cortez Holding.

175. The aforesaid conduct of the defendants constituted a breach of their fiduciary duty to the individual plaintiffs and to CPD, whereby each has been damaged.

176. The aforesaid conduct of the defendants constituted a breach of their statutory duty of loyalty to the individual plaintiffs and to CPD by failing to account for property derived in the conduct of CPD's business, by failing to hold as trustee company property derived in the conduct

33

of CPD's business, and by the appropriation of an opportunity belonging to CPD, whereby each has been damaged.

177. The aforesaid conduct of the defendants constituted a breach of their statutory duty of care to the individual plaintiffs and to CPD, in that such conduct was grossly negligent, reckless, intentional, and constituted a knowing violation of law, whereby each has been damaged.

### (iii) The mortgage foreclosure company

178. In the "Cortez Project Investment Summary" emailed to the plaintiffs by Jason Radwan in 2010, Jason Radwan stated that he had used CPD's money to invest in a "foreclosure fund."

179. Upon information and belief, the defendants used CPD's money to operate a "mortgage rescue" company which was run by Jason Radwan out of an office building that was owned by Oon Teong Ko.

180. Upon information and belief, Jason Radwan shut the company down after it came under investigation for engaging in mortgage fraud.

181. The defendants have never accounted to CPD for the funds that were used to operate the company, or for any profits derived from the operations thereof.

182. The aforesaid conduct of the defendants constituted a breach of their fiduciary duty to the individual plaintiffs and to CPD, whereby each has been damaged.

183. The aforesaid conduct of the defendants constituted a breach of their statutory duty of loyalty to the individual plaintiffs and to CPD by failing to account for property derived in the conduct of CPD's business, and by failing to hold as trustee company property derived in the conduct of CPD's business, whereby each has been damaged.

34

184. The aforesaid conduct of the defendants constituted a breach of their statutory duty of care to the individual plaintiffs and to CPD, in that such conduct was grossly negligent, reckless, intentional, and constituted a knowing violation of law, whereby each has been damaged.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually and derivatively in right of Cortez Property Development LLC, each demand judgment against the defendants for the following:

(1) such preliminary and permanent injunctive and declaratory relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate,

(2) compensatory and consequential damages;

(3) punitive damages;

(4) attorneys' fees and costs of suit;

(5) such further relief as the Court deems just and proper.

### COUNT VI

### Conversion
### (Al-Ghena and Shairco individually and Derivatively)

185. Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

186. Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and operated by Oon Teong Ko, which in 2006 purchased two adjoining parcels of real estate in Fort Lauderdale for the purpose of constructing a hotel, all as set forth in

greater detail above in Paragraphs 12 through 24 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

187. Subsequently, defendants Talat Radwan and Jason Radwan, through defendant Cortez Holding Group Inc., a Florida corporation that they owned and operated, acquired ownership of CPD from Oon Teong Ko, all as set forth in greater detail above in Paragraphs 25 through 34 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

188. Following their acquisition of CPD, the defendants engaged in the recruitment of potential investors, culminating with their solicitation of Mostafa Alshair and Mohammed Ali Nassar and their respective companies, plaintiffs Shairco and Al-Ghena, all as set forth in greater detail above in Paragraphs 35 through 49 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

189. The defendants induced the plaintiffs to each invest $6,000,000 for the purchase of a one-third ownership interest in CPD, through a serious of false representations and deliberate concealment of material facts, all as set forth in greater detail above in Paragraphs 52 through 79 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

190. Each of the plaintiffs did in fact enter into a contract for the purchase of a one-third share of CPD, and did thereby become an owner of the company, all as set forth in greater detail above in Paragraphs 109 through 129 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

191. With the one exception set forth below, both Shairco and Al-Ghena have at all times since the execution of their respective Purchase Agreements, and continuing through the

date of the filing of this Third Amended Complaint, maintained an ownership interest in Cortez Holding.

192. Prior to the filing of the original Complaint in this action, Shairco assigned it ownership rights in CPD to a New Jersey corporation fully-owned by Shairco, known as "Shairco New Jersey."

193. Prior to the filing of this Third Amended Complaint, that assignment has been reversed, such that the New Jersey corporation has assigned all ownership rights back to the original company that owned the shares, plaintiff Shairco for Trading, Industry and Contracting.

194. The plaintiffs each assert this cause of action individually on their own behalf, and derivatively in right of CPD.

195. At the times relevant to this Complaint, the defendants diverted rental income collected from CPD's property, as set forth in greater detail above in Paragraphs 160 through 166 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

196. CPD had an immediate right to receive the rent monies as they were collected, and continues to have a present and immediate right to receive all such funds.

197. Nevertheless, the defendants have deprived, and continue to deprive CPD of the possession of such funds, and have converted them to their own possession and control, whereby the plaintiffs have been damaged.

198. On March 20, 2009, using money that was the property of CPD, the defendants purchased a piece of real property located at 619 Breakers Avenue in Fort Lauderdale, referred to variously as "Sun Terrace" and as "the Breakers Hotel project," at a cost of $1,000,000, as set

forth in greater detail above in Paragraphs 167 through 177 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

199.  The defendants subsequently collected hundreds of thousands of dollars in rent from the tenants of Sun Terrace, which was rightfully the property of CPD.

200.  CPD had an immediate right to receive the rent monies as they were collected, and continues to have a present and immediate right to receive all such funds.

201.  Nevertheless, the defendants have deprived, and continue to deprive CPD of the possession of such funds, and have converted them to their own possession and control, whereby the plaintiffs have been damaged.

202  On March 20, 2009, the defendants sold Sun Terrace for $1,565,000, recognizing a profit of $565,000 on the sale which was rightfully the property of CPD.

203.  CPD had an immediate right to receive the sale proceeds from Sun Terrace, and continues to have a present and immediate right to receive all such funds

204.  Nevertheless, the defendants have deprived, and continue to deprive CPD of the possession of such funds, and have converted them to their own possession and control, whereby the plaintiffs have been damaged.

205.  All of the aforesaid conduct of the defendants, in addition to constituting the commission of the tort of conversion, also constitutes criminal theft, as defined by Section 812. 014 of the Florida Statutes.

206.  Pursuant to Section 772. 11 of the Florida Statutes, plaintiffs are entitled to bring a civil action for treble damages for the violation of Section 812.014, based upon the aforesaid acts of criminal theft.

38

207.   However, because the full scope and precise amount of such theft cannot be determined by the plaintiffs until such time as the defendants provide the books and records of and relating to CPD, the plaintiffs presently do not have sufficient information to send the demand letter required as a predicate for the filing of a Section 772.11 count, and reserve the right to send the demand letter and to add such claim to their pleadings, upon receipt of such information.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually and derivatively in right of Cortez Property Development LLC, each demand judgment against the defendants for the following:

(1)  such preliminary and permanent injunctive and declaratory relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory and consequential damages;

(3) punitive damages;

(4) attorneys= fees and costs of suit;

(5) such further relief as the Court deems just and proper.

**COUNT VII**

**Unjust Enrichment**
**(Al-Ghena and Shairco individually and Derivatively)**

208.   Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

39

209. Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and operated by Oon Teong Ko, which in 2006 purchased two adjoining parcels of real estate in Fort Lauderdale for the purpose of constructing a hotel, all as set forth in greater detail above in Paragraphs 12 through 24 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

210. Subsequently, defendants Talat Radwan and Jason Radwan, through defendant Cortez Holding Group Inc., a Florida corporation that they owned and operated, acquired ownership of CPD from Oon Teong Ko, all as set forth in greater detail above in Paragraphs 25 through 34 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

211. Following their acquisition of CPD, the defendants engaged in the recruitment of potential investors, culminating with their solicitation of Mostafa Alshair and Mohammed Ali Nassar and their respective companies, plaintiffs Shairco and Al-Ghena, all as set forth in greater detail above in Paragraphs 35 through 49 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

212. The defendants induced the plaintiffs to each invest $6,000,000 for the purchase of a one-third ownership interest in CPD, through a serious of false representations and deliberate concealment of material facts, all as set forth in greater detail above in Paragraphs 52 through 79 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

213. Each of the plaintiffs did in fact enter into a contract for the purchase of a one-third share of CPD, and did thereby become an owner of the company, all as set forth in greater detail

40

above in Paragraphs 109 through 129 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

214. With the one exception set forth below, both Shairco and Al-Ghena have at all times since the execution of their respective Purchase Agreements, and continuing through the date of the filing of this Third Amended Complaint, maintained an ownership interest in Cortez Holding.

215. Prior to the filing of the original Complaint in this action, Shairco assigned it ownership rights in CPD to a New Jersey corporation fully-owned by Shairco, known as "Shairco New Jersey."

216. Prior to the filing of this Third Amended Complaint, that assignment has been reversed, such that the New Jersey corporation has assigned all ownership rights back to the original company that owned the shares, plaintiff Shairco for Trading, Industry and Contracting.

217. The plaintiffs each assert this cause of action individually on their own behalf, and derivatively in right of CPD.

218. At the times relevant to this Complaint, the defendants received and retained rental income collected from CPD's property, as set forth in greater detail above in Paragraphs 160 through 166 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

219. On March 20, 2009, using money that was the property of CPD, the defendants purchased "Sun Terrace" at a cost of $1,000,000, as set forth in greater detail above in Paragraphs 167 through 177 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

41

220. The defendants subsequently received and retained hundreds of thousands of dollars in rent from the tenants of Sun Terrace, which was rightfully the property of CPD.

221. On March 20, 2009, the defendants sold Sun Terrace for $1,565,000, recognizing a profit of $565,000 on the sale which was rightfully the property of CPD.

222. By virtue of each of these three separate acts, CPD conferred a benefit on the defendants, which benefit was known to, accepted, and retained by the defendants.

223. Under the circumstances described heretofore, the defendants have, as a result of their misfeasance, been unjustly enriched, and it would be inequitable to permit the defendants to retain the plaintiffs' money.

224. Nevertheless, the defendants have at all times failed and refused to return the plaintiffs' investment or any part thereof, thereby wrongfully depriving each of the plaintiffs of funds to which they have a present and immediate right of possession, whereby the plaintiffs have been damaged.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually and derivatively in right of Cortez Property Development LLC, each demand judgment against the defendants for the following:

(1) such preliminary and permanent injunctive and declaratory relief as my be necessary to compel the defendants to produce certain records, to provide an accounting and such other information as plaintiffs may be entitled to, to preserve the assets of Cortez Property Development LLC, and imposing such equitable liens and/or constructive trusts as may be appropriate;

(2) compensatory damages;

(3) attorneys' fees and costs of suit;

42

(4) such further relief as the Court deems just and proper

## COUNT VIII

### Violation of Florida Statutes Chapter 608
### (Al-Ghena and Shairco individually and Derivatively)

225.   Plaintiffs incorporate paragraphs 1 through 11 as though fully set forth herein.

226.  Cortez Property Development LLC ("CPD") is a Florida limited liability company, originally owned and organized in 2005 by Oon Teong Ko.

227.   In 2007, on an exact date unknown to the plaintiffs, defendant Cortez Holding Group Inc. ("Cortez Holding") acquired the ownership of CPD from Ko, becoming the 100% owner of the limited liability company.

228.   In or about January 2008, plaintiffs Al-Ghena and Shairco each purchased a one-third ownership interest in CPD, as set forth in greater detail above in Paragraphs 109 through 129 of this Third Amended Complaint, which are hereby incorporated as though fully set forth herein.

229.   With the one exception set forth below, both Shairco and Al-Ghena have at all times since the execution of their respective Purchase Agreements, and continuing through the date of the filing of this Third Amended Complaint, maintained an ownership interest in Cortez Holding.

230.  Prior to the filing of the original Complaint in this action, Shairco assigned it ownership rights in CPD to a New Jersey corporation fully-owned by Shairco, known as "Shairco New Jersey."

231. Prior to the filing of this Third Amended Complaint, that assignment has been reversed, such that the New Jersey corporation has assigned all ownership rights back to the original company that owned the shares, plaintiff Shairco for Trading, Industry and Contracting.

232. The plaintiffs each assert this cause of action individually on their own behalf, and derivatively in right of CPD.

233. The rights asserted in this count of the Third Amended Complaint arise under the Florida Limited Liability Company statutes, Chapter 608 of the Florida Statutes.

234. The Florida Legislature has enacted a new statutory scheme for limited liability companies, modeled on the Revised Uniform Limited Liability Company Act, which became effective January 1, 2014.

235. However, pursuant to the new Act, the provisions of former Chapter 608 will continue to apply to CPD either through December 31, 2014, or until CPD makes an election to come under the new Act, whichever event occurs first.

236. The new Act, should it become effective as to CPD during the course of this action, would continue, and in some cases expand, each of the existing statutory rights asserted by the plaintiffs herein, including the right to demand and receive certain documents, and the right to maintain a derivative action in the right of CPD.

237. At all times since the plaintiffs purchased their ownership interest in CPD, defendants Talat Radwan and Jason Radwan, acting both as individuals and as authorized agents of defendant Cortez Holding, have held themselves out as the managers of the company, have exercised total control over its operations, and have maintained whatever documents exist with regard to the operation and activities of CPD.

44

238. Section 608.4101(1) of the Florida Statutes requires a limited liability company to

maintain the following records:

> "(a) A current list of the full names and last known business, residence, or mailing addresses of all members, managers, and managing members.

> "(b) A copy of the articles of organization, all certificates of conversion, and any other documents filed with the Department of State concerning the limited liability company, together with executed copies of any powers of attorney pursuant to which any articles of organization or certificates were executed.

> "(c) Copies of the limited liability company's federal, state, and local income tax returns and reports, if any, for the 3 most recent years.

> "(d) Copies of any then-effective operating agreement and any financial statements of the limited liability company for the 3 most recent years.

> "(e) Unless contained in the articles of organization or the operating agreement, a writing setting out:

> "1. The amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and which each member has agreed to contribute.

> "2. The times at which or events on the happening of which any additional contributions agreed to be made by each member are to be made.

> "3. Any events upon the happening of which the limited liability

> company is to be dissolved and its affairs wound up."

239. Pursuant to the foregoing, CPD is required, in all events, to maintain the documents

listed above in Subsections (1)(a) through (1)(d).

240. Inasmuch as the Articles of Organization of CPD do not set out the items listed in Subsection (1)(e), and inasmuch as no Operating Agreement for CPD has ever come into effect, CPD is also required to maintain each of the documents listed in Subsection (1)(e).

241. Section 608.4101(2) of the Florida Statutes codifies the unqualified right of the Members of a limited liability company to inspect and copy the aforesaid records.

242. The plaintiffs have made numerous demands for the inspection of the aforesaid records, but all such demands have been either ignored or denied, and to this day the plaintiffs, who collectively own the majority share of CPD, have been denied access to the company's records.

243. The Verification of Jeffrey A. Bronster, attached to this Third Amended Complaint details the aforesaid demands, and is incorporated by reference as though fully set forth herein.

244. Additionally, Section 608. 1410(3) requires a limited liability company to provide the following information to all Members:

> "(a) Without demand, information concerning the limited liability company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter; and
>
> "(b) On demand, other information concerning the limited liability company's business or affairs, except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances "

245. Notwithstanding the foregoing, the defendants have failed and refused to provide to the plaintiffs information reasonably required by them for the proper exercise of their rights as Members of CPD, and such other information as has been demanded of them concerning the company's business and affairs.

246. The rights of the plaintiffs, as Members of CPD, to inspect the aforesaid documents is absolute as a matter of law, and the plaintiffs are entitled to enforce the provisions of Section 608.4101 without any further demonstration of need, simply by virtue of their status as Members of the company.

247. Nevertheless, the plaintiffs, both individually and proceeding in right of CPD, require the production of the aforesaid documents in order to determine the full scope of the defendants' diversion, misuse, and conversion of the assets of CPD, all as set forth in greater detail above.

**WHEREFORE**, plaintiffs Al-Ghena and Shairco, individually and derivatively in right of Cortez Property Development LLC, each demand judgment against the defendants for the following:

(1) a declaratory judgment declaring the defendants in violation of Section 608.1410 of the Florida Statutes on the basis of their failure to afford the plaintiffs access to company documents as required by statute;

(2) preliminary and permanent injunctive relief compelling the defendants to produce certain records, to provide an accounting, and to provide such other information as plaintiffs may be deemed to be entitled to under of Section 608 1410 of the Florida Statutes;

(3) attorneys' fees and costs of suit;

(4) such further relief as the Court deems just and proper.

47

## JURY DEMAND

The plaintiffs hereby demand a trial by jury as to all issues asserted in the pleadings so triable as of right.

Dated:   Fairview, New Jersey
         February 26, 2014

/s/ Jeffrey A. Bronster
Jeffrey A. Bronster, Esq.
JEFFREY A. BRONSTER, PC
17 Wendell Place
Fairview, New Jersey 07022
(201) 945-2566
jbronster@bronsterlaw.com
Counsel for the Plaintiffs

Dated·   Fort Lauderdale, Florida
         February 26, 2014

/s/ Paul O. Lopez
Paul O. Lopez, Esq.
TRIPP SCOTT
110 SE Sixth Street
Fort Lauderdale, FL 33301
(954)525-7500
pol@TrippScott.com
Local Counsel for the Plaintiffs

## VERIFICATION

I, Kamal Halal, hereby verify under penalty of perjury that the allegations of this Third Amended Complaint are true and accurate to the best of my knowledge and belief, and that this derivative action is not a collusive one to confer jurisdiction that the court would otherwise lack.

/s/ Kamal Halal
KAMAL HALAL

Dated:   Jeddah, Saudi Arabia
         February 26, 2014

48

## **VERIFICATION**

I, Jeffrey A. Bronster, counsel for the plaintiffs in the above-captioned action, hereby verify under penalty of perjury that this action is not a collusive one to confer jurisdiction that the court would otherwise lack.

I further verify that prior to the filing of the original Complaint in this action, I made demands upon the defendants for certain actions, which were either refused or ignored. Specifically, I made demands for the production of certain records and for an accounting for certain funds, including the $6, 000, 000 contribution to the venture that was to have been made by Cortez Holding Group. The details of the demands that I made and the defendants' responses are as follows, and the documents referred to herein are attached to this Third Amended Complaint as Exhibit N:

(a) On November 2, 2011, I wrote to Talat Radwan and to Jason Radwan, requesting access to, and inspection of, the books and records of the company;

(b) On November 9, 2011, Jason Radwan left a voicemail message for me, and followed up the next day with an email;

(c) After an exchange of emails, on November 11, 2011 I had a telephone conversation with Jason Radwan regarding my request to inspect the records. I offered to travel to California or to Florida, as might be necessary, to conduct the inspection, or to allow the defendants to either bring or send copies of the documents to New Jersey. Jason Radwan promised to call me back with a decision, but did not do so;

(d) On November 15, 2011, I called Jason Radwan. He stated that he intended to hire an attorney to have him organize and go through all of the documents, and that the attorney would

then contact me to discuss what documents would be produced. I documented the conversation in detail in an email sent that same day;

(e) On November 20, 2011, I received a telephone call from Jason Radwan, who now agreed to copy the documents I had requested and to send them to New Jersey. He added that the books and records requested were very extensive and, and that he needed time to organize them;

(f) I asked Jason Radwan to overnight whatever documents he could, and to continue producing documents as he continued to organize them; he agreed to call me back to advise me as to the progress of the document production. Not receiving the promised phone call, I initiated a further exchange of emails;

(g) In the new emails, I also requested an explanation as to why Cortez Holding had never put up the $6,000,000 that it had committed to. Mr. Radwan never provided an explanation;

(h) On or about November 30, 2011, I plaintiffs' counsel received an overnight package from Jason Radwan containing a CD-Rom disk with the following contents: 13 pdf. files, of which 12 could be opened; two folders apparently containing photographs of the hotel site, which could be only partially opened; and a large folder in compressed ("zip") format that was corrupted, and which could not be opened at all;

(i) None of the documents provided on the CD-Rom were financial documents, nor were they responsive to the demand that I had made on behalf of the plaintiffs for the production of the books and records of the company;

(j) In a letter that I emailed to Jason Radwan on December 6, 2011, I detailed the contents of the disk, informed Jason Radwan that what he had sent did not comply with the plaintiffs'

demand to produce the books and records of the LLC, and renewed the plaintiffs' demand to be permitted to inspect the books and records of the company.

(k) The requested documents were never produced, and no inspection was ever permitted.

/s/ Jeffrey A. Bronster
JEFFREY A. BRONSTER

Dated:   Fairview, New Jersey
         February 26, 2014